UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WAL-MART STORES, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CASE NO. 1:07-CV-0470-DFH-JMS |
| | ) |
| S.C. NESTEL, INC. AND OHIO FARMERS | ) |
| INSURANCE COMPANY | ) |
| | ) |
| Defendants. | ) |

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Wal-Mart Stores, Inc. and S.C. Nestel, Inc. entered into a contract for S.C. Nestel to build a Wal-Mart superstore in Washington, Indiana.  As part of the contract's Storm Water Pollution Protection Plan, S.C. Nestel was required to provide a Daily Inspection Report Form ("SWPPP Report").  Once every two weeks, a compliance officer was required to perform an inspection and sign the SWPPP report.  On September 12, 2005, Charles Nestel, acting in his role as compliance officer, signed the SWPPP Report.  The parties agree that Mr. Nestel did not personally visit the site on that day but instead had been on the site on September 8, 2005.  Wal-Mart found that this submission was "false or misleading" and terminated the contract immediately.

Wal-Mart sued S.C. Nestel for breach of contract and sued S.C. Nestel's surety, Ohio Farmers Insurance Company, for failure to defend and indemnify. S.C. Nestel counterclaimed alleging breach of contract, breach of duty of good faith and fair dealing, wrongful termination, unjust enrichment, and two other breach of contract claims arising out of another contract. Both sides have filed motions for partial summary judgment. Wal-Mart moves for partial summary judgment on its two claims and for summary judgment on S.C. Nestel's counterclaims for breach of contract, breach of duty of good faith and fair dealing, wrongful termination, and unjust enrichment. S.C. Nestel moves for summary judgment on its breach of contract counterclaim and on both claims asserted by Wal-Mart. After reviewing the parties evidentiary submissions, the court finds that a factual issue exists as to whether Wal-Mart was entitled to cancel the construction contract, so all motions for summary judgment on the breach of contract issue are denied. Wal-Mart's summary judgment motion is granted on S.C. Nestel's counterclaims for wrongful termination and breach of duty of good faith and fair dealing.

*The Facts and Terms of the Contract*

Wal-Mart and S.C. Nestel entered into approximately 25 contracts for S.C. Nestel to build Wal-Mart stores between 1992 and 2007. Nestel Aff. ¶ 8. The contract for the Washington, Indiana site was executed in April 2005. Wal-Mart agreed to pay $12,147,263 to S.C. Nestel for the project. *Id.*, ¶ 7. The contract

required a surety, and S.C. Nestel contracted with Ohio Farmers to provide a payment bond and a performance bond.  As part of the contract with Wal-Mart, S.C. Nestel was required to implement the Storm Water Pollution Protection Plan or "SWPPP," calling for daily reports by a local superintendent, weekly meetings of staff, and a bi-weekly check by a "compliance officer."

S.C. Nestel had its project manager, Craig Allban, trained and qualified to serve as a compliance officer.  Charles Nestel, the company's general manager, had previously been trained to serve as a compliance officer in SWPPP reporting. Nestel Aff. ¶ 15.  In 2005, Mr. Nestel had no equity in the company.  (He now is full owner of the company.)  From the beginning of the project, the compliance officer duties were performed by Allban.  He was terminated, however, at the end of August 2005.  *Id.*, ¶ 14.  To that point, Mr. Nestel had never signed a SWPPP Report for the Washington project and had signed only two in total for other sites. *Id.*, ¶ 15.

On September 8, 2005, Mr. Nestel was at the Washington site and took a tour of the facility.  He did not sign that day's SWPPP Report.  *Id.*, ¶ 17.  On September 12, 2005, Mr. Nestel was never at the Washington site and was instead in his office in Indianapolis.  S.C. Nestel had last submitted a SWPPP report with a compliance signature on August 26, 2005, meaning the two-week signature had been due the previous Friday, September 9, 2005.  S.C. Nestel sent  Wal-Mart a copy of the SWPPP Report that was signed only by superintendent Greg Blair.

Another superintendent, Rick Adams, faxed Mr. Nestel a copy of the report for September 12th.   Mr. Nestel signed the report and returned it by fax to the Washington site to be placed in the binder of daily reports maintained at the site. Nestel Aff. ¶ 6.  Mr. Nestel's signature came under the following paragraph:

> I certify under penalty of perjury that I personally observed this inspection. All corrective actions noted as necessary on preceding Daily Inspection Reports prepared by "Inspectors", Compliance Officers, or Construction Managers have been fully completed as noted above in conformance with the time limitations provided in the Contract Documents.  Based upon my observations during the inspection, I certify that the information in this inspection report is true, accurate, and complete.  I am aware that there are significant penalties for perjury, including fines and imprisonment for knowing violations.

Dkt. No. 47, Ex. K.


Additional events of September 12th are disputed by the parties.  Wal-Mart argues that Mr. Nestel intentionally and knowingly submitted a fraudulent SWPPP report.   S.C. Nestel argues it was an innocent mistake.   Wal-Mart provides deposition testimony from two S.C. Nestel employees who were superintendents at the Washington site.  The first, Mr. Blair, signed the relevant SWPPP report. Dkt. 47, Ex. K.  Mr. Blair testified in his deposition that he instructed Mr. Nestel that Mr. Nestel needed to travel to the site for an inspection.  Mr. Nestel declined and stayed in Indianapolis.  Mr. Blair also testified that in placing the faxed copy of the SWPPP in the report book, it was "inherently implied" to be an attempt to hide the fact that Mr. Nestel had not been there on September 12th.  Blair Dep. 98-99.  In addition, Rick Adams testified that he knew that Mr. Nestel should have

been on site on the September 12th to sign the document: "If you sign this report, you're to be on site. There is no ifs, ands, or buts about it." Adams Dep. 76.

S.C. Nestel disputes these accusations. The contract requires a report every two weeks. Mr. Nestel had done an inspection of the site on September 8, 2005. In his mind, he was certifying that as of September 12, 2005, he had made an inspection sometime in the past two weeks. "I was representing that I made the inspection on the 8th." Nestel Dep. 83. He denies ever refusing to drive to Washington or being told by Mr. Blair that signing the faxed copy was inappropriate. Nestel Aff. ¶¶ 4-5. S.C. Nestel tries to bolster its claim about internal confusion by noting that the September 12, 2005 report was the first by a compliance officer since Mr. Allban's termination. S.C. Nestel additionally provides a copy of the fax sent to Mr. Nestel on September 12, 2005. This fax is the only documentary evidence submitted about the conversation between the people at the Washington site and Mr. Nestel in Indianapolis. It was from Rick Adams and states only: "Please sign and fax back A.S.A.P. Thanks!" Dkt. 47, Ex. J.

Wal-Mart learned about the SWPPP report and began an internal investigation. It first notified Mr. Nestel of this investigation on September 21, 2005, at which point its representatives told him that the matter had been referred to Wal-Mart's lawyers. On October 12, 2005, Wal-Mart terminated the construction contract, effective immediately. Dkt. 47, Ex. N. In so doing, Wal-

Mart relied primarily on Section 10(A) of the parties' "Special Conditions" section of the contract.  Section 10(A) provides:

> Several letters of certification and other submittals and documentation are required to be provided by Contractor pursuant to the Contract documents. If any of those letters of certification, submittals, or other documentation are false or misleading, Owner, shall have the right to terminate the Contract immediately for cause in its sole discretion and shall have all rights and remedies available to it at law, in equity or under the Contract documents, including, without limitation, Section 8.S.3.b of these Special Conditions.

In its termination notice, Wal-Mart offered S.C. Nestel and Ohio Farmers an opportunity to find a new contractor to minimize their liability for damages.  S.C. Nestel was unsuccessful in that effort.   Wal-Mart eventually contracted with another contractor for a price of $12,147,263.  Novak Aff. ¶ 17.  In the interim, Wal-Mart was a defendant or cross-defendant in three different lawsuits stemming from its termination of S.C. Nestel's contract.   Dkt. No. 43 at 11-12.   After cancelling the contract, Wal-Mart asked S.C. Nestel to continue to perform SWPPP work, and S.C. Nestel agreed to do so.  In addition, materials that S.C. Nestel left on the site were used by the subsequent contractor without payment to S.C. Nestel.  Nestel Aff. ¶ 25.

*Standard for Summary Judgment*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."   *Matsushita*

*Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). A court's ruling on a motion for summary judgment is akin to that on a motion for a directed verdict. The question for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Only genuine disputes over material facts can prevent a grant of summary judgment. *Id.* at 247-48. A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255. However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in

favor of the non-moving party based on the evidence in the record. *Anderson*, 477 U.S. at 251-52.

The fact that both sides have filed motions for summary judgment does not alter the applicable standard and does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Services, LLC v. Int'l Union of Operating Engineers*, 335 F.3d 643, 647 (7th Cir. 2003). The court must consider each motion independently and must deny both motions if there is a genuine issue of material fact. *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Harms v. Laboratory Corp. of America*, 155 F. Supp. 2d 891, 906 (N.D. Ill. 2001). Thus, in considering cross-motions for summary judgment, the court must consider the evidence through two lenses. When considering Wal-Mart's motion for summary judgment, the court must give S.C. Nestel the benefit of all conflicts in the evidence and the benefit of all reasonable inferences that might be drawn from the evidence in its favor. When considering S.C. Nestel's motion for summary judgment, the roles are reversed.

## Discussion

Both sides' central claims revolve around the breach of contract issue. If Wal-Mart was within its rights to cancel the contract, S.C. Nestel's wrongful termination and breach of duty of good faith claims would also disappear. If Wal-

Mart was not within its rights to terminate the contract, Ohio Farmers had no duty to defend or indemnify in the resulting suits.[1]

I.      *The Contract Term Allowing Immediate Termination*

Wal-Mart relies on Section 10(A)  of the Special Conditions and contends that the language of that section is the sole pertinent language.  S.C. Nestel disagrees for two reasons.  First, S.C. Nestel argues that any termination "for cause" is governed by Article 14 of the General Conditions and that the alleged violation was actually an "Administration Violation" governed by Special Condition 8(S)(1).  S.C. Nestel argues that at the very least, the contrasting terms are ambiguous and should be construed against the drafter of the contract, Wal-Mart. The language of the contract is clear, however, that Section 10(A)  governs this dispute.[2]

Section 10(A) gives Wal-Mart the right to terminate the contract immediately "for cause" if there is a false or misleading report.  S.C. Nestel argues that all

---

[1]Ohio Farmers incurs liability if S.C. Nestel breached the contract.  The parties are represented by the same counsel.  For convenience, the court generally refers only to the interests of S.C. Nestel.

[2]In its reply brief, S.C. Nestel raises the argument that Article 4 of the General Conditions prohibits a termination of the contract.  This argument is incorrect.  As shown below, a conflict between the general conditions and the special conditions is resolved in favor of the terms of the special conditions. Additionally, Article 4 deals with claims for conditions short of outright termination of the contract.  In any case, S.C. Nestel first raised this argument in reply, and arguments first raised in reply are typically waived.  See *Kelso v. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005).

termination for cause should be governed by the language of Article 14 of the General Conditions.  That section requires a seven day notice of any termination for cause, a notice not given by Wal-Mart.  Section 14.2 governs "Termination by the Owner For Cause."  It lists four justifications for termination for cause.  The first three are specific.  S.C. Nestel argues that Wal-Mart's termination here falls under the fourth catch-all term:  "otherwise is guilty of substantial breach of a provision of the Contract Documents."  When this provision is triggered, Section 14.2.2 requires seven days' notice to both the contractor and the contractor's surety.

S.C. Nestel's argument that Section 14.2 is triggered by *any* termination for cause is incorrect for two reasons.  First, the specific language of Section 10(A) allows for termination "immediately" when a certification is false.  A contract must be read in a fashion that harmonizes its provisions and gives meaning to all of its words.  *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1315 (Ind. 1996); *Indiana Gaming Co. v. Blevins*, 724 N.E.2d 274, 278 (Ind. App. 2000).[3]  S.C. Nestel's interpretation treats "immediately" as extraneous verbiage.  To avoid this result, S.C. Nestel argues that "immediately" triggers "when" the contract may be terminated but not "how," and that to give force to Section 14.2 somehow requires Section 10(a) to mean that Wal-Mart can terminate "immediately" after the end of seven days' notice.  Despite S.C. Nestel's protests, Wal-Mart's  interpretation does

---

[3]The contract states and all parties agree that it is governed by Indiana law.

not render Section 14.2 meaningless.   It merely means that if Wal-Mart is terminating the contract based on fraudulent submissions, that specific situation is serious enough to supercede the more general requirements of Section 14.2 and to allow for immediate termination.   Wal-Mart would have to give seven days notice if the "cause" was any of the three enumerated reasons or for a substantial breach of contract not related to false or misleading submissions.

Even if the terms at first seemed to conflict, the contract provides the order of preference in how they should be prioritized.   Article 1.3 of the main Construction Contract sets out how "conflict among the Contract documents" should be analyzed.   After giving primacy to the Contract itself, Article 1.3(b) states that "the Special Conditions shall govern over all other Contract Documents," which includes the "General Conditions."   Here, the right to terminate "immediately" is in the Special Conditions.  The "for cause" termination is in the "General Conditions."   Any conflict must be resolved in favor of the language in the Special Conditions, thus allowing immediate termination without prior notice.

S.C. Nestel's second argument is that its false report should be treated as an Administrative Violation.  That section of the Special Conditions requires a $1,000 payment by S.C. Nestel to Wal-Mart for five reporting errors.  After three Administrative Violations, Wal-Mart had the right to terminate the contract.

These violations include minor failures in the SWPPP process, including failure to document any weekly meeting or failure to record repairs and modifications.

S.C. Nestel is correct that if the September 12th submission was in fact an honest mistake, it is consistent with the types of errors that led to Administrative Violations.  The problem with its argument, however, is that there is no "catch-all" Administrative Violation.  Instead, five specific failures are enumerated.  None of them can be read to include what S.C. Nestel says led to the erroneous September 12th report.  The closest is a failure to transmit the Daily Inspection Report Form, but failure to transmit a report and falsification of a report are not the same thing. The September 12th report does not fall under the Administrative Violation sections of the Contract.[4]

II.    *S.C. Nestel's Breach of Contract Counterclaim*

The fact that Section 10 governs easily resolves the issue of S.C. Nestel's summary judgment motion on behalf of its own breach of contract claim.  Under the terms of that section, Wal-Mart had the right to terminate the contract for any

---

[4]The Administrative Violations listed in Section 8(R)of the Special Conditions are:

1.    Failure to document any weekly meeting
2.    Failure to accurately report conditions of the BMPs [Best Management Practices] on the Site
3.    Failure to transmit any Daily Inspection Report Form
4.    Failure to record any altered BMPs
5.    Failure to record repairs and modifications.

"false or misleading" submission.  Wal-Mart has come forth with evidence that would allow a jury to find that Mr. Nestel knowingly made the false report in an effort to avoid the fine that would result from a failure to inspect every two weeks. Wal-Mart has offered the testimony of an S.C. Nestel employee, Mr. Blair, who asserts that he told Mr. Nestel to come do a personal inspection, and Mr. Nestel declined and instead signed the incorrect report.

The evidence also raises an issue of material fact as to whether the submissions were an honest mistake or an intentional effort to mislead Wal-Mart. Mr. Nestel's contention that he had inspected on September 8th and confirmed that no other violations had occurred does not matter.  The purpose of the contractual term is for a specifically trained individual to investigate waste water once every two weeks and specifically to review a daily SWPPP report.  It is uncontested that Mr. Nestel did not inspect the facility on September 12, 2005. To find that an intentionally misleading statement did not warrant Wal-Mart's actions would discourage an owner from closely monitoring its contractors' compliance with environmental protections.

III.    *Wal-Mart's Breach of Contract Claim*

Wal-Mart's claim for breach of contract against S.C. Nestel is not so easily resolved, but summary judgment must also be denied.  Wal-Mart asserts that two undisputed facts are all that are necessary to resolve the dispute.  First, Mr.

Nestel signed the form certifying that he had overseen the inspection on September 12th.  Second, Mr. Nestel was undisputedly not at the Washington site on September 12th.  Therefore, the report is "false," and Wal-Mart had a right to cancel the contract under Section 10(A) in its sole discretion.

S.C. Nestel contends this interpretation would be absurd if taken to its logical extreme.  The SWPPP report calls for a notation of weather conditions, and S.C. Nestel asserts that under Wal-Mart's theory, it could cancel the contract if the inspector marks "sunny" when there is in fact a cloud in the sky.  Dkt. 50 at 8-9.  S.C. Nestel claims that this absurd outcome means that Wal-Mart is required to give notice to determine whether an intentionally false or misleading document has been submitted.  Notice does not solve the problem, however, because S.C. Nestel's contention is not that the day was in fact "sunny" but that the difference between "sunny" and "partly sunny" is not grounds for cancelling the contract.

What S.C. Nestel is effectively arguing is that "false" should not be read in its broadest sense of simply "incorrect" but should be read more narrowly to apply only to intentional deception.  Wal-Mart provides no evidence that the substance of the report was incorrect, nor that any SWPPP violations occurred while S.C. Nestel was running the construction.  Its only contention is that Mr. Nestel's September 12th certification was false because he was not physically on site. Wal-Mart contends that this falsehood was a deliberate attempt to mislead it and avoid a fine, so that Section 10 gives it the power to terminate.   However,

construing the facts favorably to S.C. Nestel, an issue of material fact remains as to whether S.C. Nestel's submission was "false" as the term is used in this contract.

Wal-Mart thinks that its decision is beyond review because the contract specifically states that the decision is to be made by Wal-Mart in its "sole discretion." It cites three Indiana cases for the proposition that "sole discretion" leaves the decision beyond judicial second-guessing. In the first case, Barbasol had a contract that allowed it to cancel the contract if it could not make money under its terms and made Barbasol the "sole judge" of that condition. *Barbasol Co. v. Leggett*, 19 N.E.2d 481 (Ind. App. 1939). The court found that Barbasol's decision to cancel the contract with that language could not be challenged in court. The second case involved a credit bureau's cancellation of a contract that provided for cancellation based on 10 days notice by either party. *Mortgage Credit Services, Inc. v. Equifax Credit Information Services, Inc.*, 766 N.E.2d 810 (Ind. App. 2002). Mortgage Credit Services sued based on the cancellation. The court held that the clause was unambiguous and allowed termination of the contract without further debate in court. Finally, Wal-Mart cites a case from the employment context where a school principal was fired without cause. *Gatto v. St. Richard School*, 774 N.E.2d 914 (Ind. App. 2002). The court found that the firing party did not have to be reasonable: "when a firing party is given the exclusive contractual authority to determine reasonableness, there is no need for resort to a fact-finder's second guessing." *Id.* at 921.

-15-

Those cases allow for a broad right to terminate contracts but arose in a context different from this case.  In those cases, the parties who cancelled the contracts were being sued for breach of contract.  The parties defended on the theory that they were entitled to cancel the contracts.  Here, Wal-Mart is using its sole discretion as a means not of just defending its cancellation but also to maintain a suit for breach of contract against S.C. Nestel.  Wal-Mart is arguing effectively that sole discretion can be used not only as a shield but as a sword to recoup damages.  None of the cases cited by Wal-Mart held that the terminating party was entitled to damages based on a "sole discretion" termination.  The defendants were merely exercising a right to cancel.  Wal-Mart interprets Section 10(A) to mean that the submission of a false or misleading report is a material breach.  What cannot follow, however, is that the determination of a material breach is left solely to the unreviewable discretion of a party.[5]

The actual contract provision allows immediate cancellation for "false or misleading" submissions.  The provision is best understood as requiring that the submission be deliberately false or misleading.  The consequences of a breach — immediate termination, with no opportunity to cure the breach, followed by liability for additional costs of being replaced by another contractor to complete the job — are so serious that it is highly unlikely the parties contemplated that an

_____

[5]For instance, Wal-Mart's theory would allow it to cancel the contract for a minor reporting mistake if Wal-Mart thought it could find a cheaper bid to complete the construction of the project.  Wal-Mart would have no risk.  If the new contractor ended up being more expensive, that cost would be merely passed on to S.C. Nestel.

honest mistake would cause them.  This interpretation of the contract language is consistent with other fields of law, where similar language is interpreted as requiring deliberate deception, including the common law of fraud, *e.g.*, *Bowman v. City of Indianapolis*, 133 F.3d 513, 518-19 (7th Cir. 1998) (applying Indiana law), and securities fraud, *e.g.*, *In re HealthCare Compare Corp. Securities Litigation*, 75 F.3d 276, 280 (7th Cir. 1996) (applying SEC Rule 10b-5). The question is whether a reasonable jury would be required to find that S.C. Nestel was acting deliberately to deceive Wal-Mart.  The issues of veracity and intent are difficult, but not always impossible, to determine on a plaintiff's motion for summary judgment.  See *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (affirming summary judgment for plaintiff where intent to defraud was required, but noting that the case was "exceptional" and that for cases "to be classified as extreme, the testimony sought to be withheld from the trier of fact must be not just implausible, but utterly implausible in light of all relevant circumstances").

S.C. Nestel has raised a sufficient issue of fact to avoid such an "exceptional" ruling.  On this record, viewed through the summary judgment lens, a reasonable jury might find that S.C. Nestel merely made an honest mistake. First, the deposition testimony of Mr. Nestel is that the entire affair was an innocent mistake.  Second, the compliance officer position was in flux following the dismissal of Mr. Allban, perhaps leading to confusion and a lack of awareness of proper protocol.  Third, the only documentary evidence besides the SWPPP report itself is a vague fax from Rick Adams requesting Mr. Nestel to "Please sign

and fax back A.S.A.P." the SWPPP report.  That fax is consistent with Mr. Nestel's deposition testimony that the submission was an innocent mistake.  The fax might be difficult to reconcile with Mr. Adams' testimony that he told Mr. Nestel that he needed to be physically present on September 12th.  Fourth, if Mr. Nestel's intent was to avoid the $1,000 fine, the SWPPP report on September 12th was more than two weeks after the previous report verified by Mr. Allban.  Considering that Mr. Nestel had inspected on September 8th, a much more plausible action would have been to doctor that report after the fact.  Finally, Mr. Nestel had investigated the site on September 8th, and no evidence of any actual violations has been submitted.  If Wal-Mart had ignored the report, no evidence in the record suggests that it would have suffered any tangible harm.  For all these reasons, the issue of whether S.C. Nestel submitted a "false" statement as that term is intended in Section 10(A) of the contract presents a factual dispute that the court is not permitted to resolve on a motion for summary judgment.

IV.   *S.C. Nestel's Counterclaim for Breach of Contract*

The same questions of fact that prevent summary judgment on Wal-Mart's own motion for summary judgment preclude summary judgment for Wal-Mart on S.C. Nestel's counterclaim for breach of contract.   Wal-Mart claims that the cancellation term, if properly invoked, allows for all damages resulting from the cancellation.   This asserted total discretion is not consistent with *Barbasol*, *Mortgage Credit Services*, and *Gatto*.   Those cases involved clauses where the

contract was terminable through no fault of the other party.  Here, Section 10(A) is best read as requiring an intentionally false or misleading statement that goes to the honesty and reliability of S.C. Nestel.  Wal-Mart could not exercise this clause merely on a whim and cancel the contract based on an honest mistake. Whether S.C. Nestel intentionally filed a false statement is a question of fact that the court may not decide as a matter of law on motions for summary judgment. If S.C. Nestel did not breach the construction contract, Wal-Mart had no right to terminate it.  In that case, S.C. Nestel could recover on its counterclaim.  The evidence showing the possibility of an honest mistake is sufficient to survive summary judgment.


V.      *S.C. Nestel's Wrongful Termination Counterclaim*

Wal-Mart argues the wrongful termination claim should be dismissed because a wrongful termination claim is valid only in the employment context. This proposition is not correct.  See *F.E. Gates Co. v. Hydro-Technologies, Inc.*, 722 N.E.2d 898 (Ind. App. 2000) (upholding jury verdict on claim for wrongful termination of a subcontract); *Cincinnati Ins. Co. v. Jasper City Utility Service Bd.*, 2006 WL 2472735, at *4-5 (S.D. Ind. August 24, 2006) (allowing a claim for wrongful termination of a contract to survive summary judgment where issue of substantial completion remained a factual dispute).  S.C. Nestel's counterclaim alleges merely one type of breach of contract and is within the scope of the

broader claim for breach of contract.  There could be no separate claim or damage award for wrongful termination of the contract.

The status of "wrongful termination" in a construction contract is not entirely clear under Indiana law.  The above cited cases allow suits in a non-employment setting where wrongful termination is alleged.  They appear, however, to be simply a specific form of breach of contract.  See, *e.g., Biomet, Inc. v. Smith*, 238 F. Supp. 2d 1036, 1049 (N.D. Ind. 2002) (evaluating the merits of a claim for "Breach of Contract based on wrongful termination").  In effect, the "wrongful termination" claim is simply a claim that the other party impermissibly terminated the contract, which is perfectly cognizable as a breach of contract claim.  This court is not overly concerned with how the parties choose to define their causes of action.  S.C. Nestel's counterclaim is based on Wal-Mart allegedly cancelling the contract in breach of its terms.  If S.C. Nestel proves that Wal-Mart had no right to terminate the contract, it will be entitled to the full extent of resulting contractual damages.  A separate cause of action for "wrongful termination" is duplicative.  Wal-Mart's summary judgment motion on the wrongful termination counterclaim is granted, without prejudice to S.C. Nestel's broader counterclaim for breach of contract.

VI.    *S.C. Nestel's Claim for Breach of Duty of Good Faith*

In general, Indiana does not recognize a duty of good faith and fair dealing in a normal construction contract. *First Federal Savings Bank of Indiana v. Key Markets, Inc.*, 559 N.E.2d 600, 604-05 (Ind. 1990). S.C. Nestel acknowledges Indiana law's unwillingness to read such a clause into a contract but argues that the terms of the contract expressly impose such a duty. *Lake County Trust Co. v. Wine*, 704 N.E.2d 1035, 1039 (Ind. App. 1998). S.C. Nestel cites a number of contract provisions that use the term "good faith." These specific provisions that call for good faith performance do not mean that all other provisions in the entire contract incorporate the requirement. S.C. Nestel's cited case, *Lake County Trust*, is entirely on point. There, a leasing contract incorporated an additional document that called for fairness in application of the posted rules and regulations. Any express duty of good faith in that context "limits itself to the rules and regulations and therefore does not apply to the conditions of the lease." *Id.* at 1040. The closest S.C. Nestel comes to finding good faith in relevant contract terms is a statement that liquidated damages for administrative violations were the parties' "good faith estimate." In no way does this impose an implicit good faith obligation on Wal-Mart in the sections of the contract dealing with termination for fraudulent submissions. As a result, Wal-Mart's summary judgment motion to dismiss the claim for breach of duty of good faith and fair dealing is granted.

VII.  *S.C. Nestel's Counterclaim for Unjust Enrichment*

Neither side has submitted much substantive evidence or made detailed arguments on the issue of S.C. Nestel's unjust enrichment claim.  On this limited record, Wal-Mart's summary judgment motion must be denied.   An unjust enrichment claim is a quasi-contractual claim to "force those who have been unjustly enriched at the expense of another party to make restitution to that other party."  *Kelly v. Levandoski*, 825 N.E.2d 850, 861 (Ind. App. 2005).  In Indiana, an unjust enrichment action arises only where no contract governs the relationship.  *Ball v. Versar, Inc.*, 454 F. Supp. 2d 783, 811 (S.D. Ind. 2006).  S.C. Nestel does not contest this statement of the law but argues that its claim deals with alleged unjust enrichment after the contract was terminated on October 12, 2005.  After that date, S.C. Nestel alleges it continued to perform SWPPP work, left supplies that were used by the subsequent general contractor, and incurred demobilization costs.   Dkt. 46 at 26.   By its reasoning, if Wal-Mart properly terminated the contract, these services were provided without a contract so that an unjust enrichment claim might survive.

Wal-Mart argues that S.C. Nestel's actions all fell under the contract.  The October 12th termination letter stated that S.C. Nestel remained contractually "obligated to secure and protect the Project site as required to prevent unauthorized discharge of storm water, as per the plans and specifications set forth in the Agreement."   Dkt. 47, Ex. N.   The storm water work was work "required by the Contract Documents."  Nestel Aff. ¶ 3 and Ex. 2 thereto at 2-13.  Wal-Mart is effectively asserting the right to cancel the contract and then to insist

that S.C. Nestel continue working without compensation.   Wal-Mart's letter is not proof that the contract includes such a requirement.   Nothing in the actual contract term that Wal-Mart invoked to terminate the contract immediately mentions requirements to continue SWPPP monitoring and reporting.

Based on this limited information, Wal-Mart's summary judgment motion on S.C. Nestel's unjust enrichment claim must be denied.   Construing the facts most favorably to S.C. Nestel, it is possible that it continued to provide services to Wal-Mart after the contract was terminated and that Wal-Mart benefitted from but paid no compensation for those services.   Wal-Mart's theory that the SWPPP compliance was part of the contract after termination is not sufficient, at least as a matter of law.   Obviously, S.C. Nestel stopped the SWPPP compliance at some point in the construction of the project, and Wal-Mart does not point out a section of the contract that requires continued compliance indefinitely and without compensation if Wal-Mart chooses to cancel the contract.   Wal-Mart was not entitled, at least as a matter of law, to exercise its broad right to cancellation, to stop payment, and then to benefit from free work to be performed by its former contractor.

*Conclusion*

For the foregoing reasons, Wal-Mart's motion for partial summary judgment (Docket No. 42) is granted in part and denied in part.   Wal-Mart's motion is

granted as to S.C. Nestel's wrongful termination and breach of duty of good faith counterclaims.   Wal-Mart's motion is denied with respect to its own breach of contract claim, its claim for defense and indemnification, and S.C. Nestel's counterclaims for breach of contract and unjust enrichment.  S.C. Nestel's motion for summary judgment (Docket No. 45) is denied.


So ordered.


Date: March 30, 2009

_David F. Hamilton_____

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana


Copies to:

Raymond A. Basile
HARRISON & MOBERLY
basile@h-mlaw.com

Mark J. Dinsmore
BARNES & THORNBURG LLP
mark.dinsmore@btlaw.com

Jimmie Lamar McMillian
BARNES & THORNBURG LLP
jmcmillian@btlaw.com

David J. Theising
HARRISON & MOBERLY
dtheising@h-mlaw.com