UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| WAL-MART STORES, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-0470-LJM-JMS |
| | ) | |
| S.C. NESTEL, INC. and OHIO FARMERS | ) | |
| INSURANCE COMPANY, | ) | |
| Defendants. | ) | |

## ORDER ON PRETRIAL MOTIONS

This matter comes before the Court on plaintiff,'s Wal-Mart Stores, Inc. ("Wal-Mart"),

Motion to Exclude the Proposed Expert Testimony of Howard I. Gross (Dkt. No. 96) and

Motion in Limine (Dkt. No. 104).  Plaintiff's motions ask the Court to exclude two specific

groups of evidence in this matter: (1) evidence relating to defendant's, S.C. Nestel, Inc.

("S.C. Nestel"), alleged consequential damages; and (2) evidence relating to alleged

reporting violations that occurred at Wal-Mart project locations other than the Washington,

Indiana location.  This entry focuses on the first group.  The Court rules as follows.

## I. BACKGROUND

The Court assumes the reader's familiarity with the facts as summarized in the

Court's March 30, 2009, Order on Cross-Motions for Summary Judgment ("Summary

Judgment Order").  Nevertheless, the Court provides the following brief review.

In April 2005, Wal-Mart and S.C. Nestel entered into a contract for S.C. Nestel to

build a Wal-Mart superstore in Washington, Indiana.  Pursuant to the terms of the contract,

S.C. Nestel submitted Performance Bond #754170 and Payment Bond #754170, which

were executed by S.C. Nestel, as principal, and defendant, Ohio Farmers Insurance Company ("Ohio Farmers"), as surety.

As part of the contract's Storm Water Pollution Protection Plan, S.C. Nestel was required to provide a Daily Inspection Report Form.  Once every two weeks, a compliance officer was required to perform an inspection and sign the Daily Inspection Report Form.  On September 12, 2005, Charles Nestel, acting in his role as compliance officer, signed the Daily Inspection Report Form.  The parties agree that Mr. Nestel did not personally visit the site on that day, but instead visited the site on September 8, 2005.  Wal-Mart found that this submission was "false or misleading" and terminated the contract immediately.

Wal-Mart initiated this action against defendants, S.C. Nestel and Ohio Farmers alleging breach of contract.  Wal-Mart has sued S.C. Nestel for breach of contract and sued S.C. Nestel's surety, Ohio Farmers Insurance Company, for failure to defend and indemnify.  S.C. Nestel has counterclaimed alleging breach of contract.  S.C. Nestel alleges that, as a result of Wal-Mart's unwarranted termination of the agreement, it suffered consequential damages from lost bonding capacity.[1]

In its summary judgment order, the Court concluded that there remained a genuine issue of material fact regarding whether Nestel's September 12, 2005, submission was intentionally "false or misleading."  Therefore, the focus of the finder of fact's inquiry during trial is whether Charles Nestel intentionally filed a false and misleading report to Wal-Mart.

---

[1] "Lost bonding capacity" refers to S.C. Nestel's alleged inability to procure performance bonds from sureties for future construction projects.

2

## II. **DISCUSSION**

Initially, S.C. Nestel asserts that Wal-Mart waived its ability to argue that Article 17 of the parties' contract bars S.C. Nestel's claims because Wal-Mart filed to plead waiver as an affirmative defense. The Court disagrees. S.C. Nestel pled in its Complaint that it suffered damages as a proximate result of Wal-Mart's alleged breach, but, in its initial and supplemental disclosures, S.C. Nestel did not identify "lost bonding capacity" as the specific damages to which it believed it was entitled. Rather, S.C. Nestel disclosed the lost bonding capacity to Wal-Mart during settlement negotiations and claim that Wal-Mart failed to amend their pleadings in a timely manner. The Court concludes S.C. Nestel's disclosure did not trigger any responsibility on Wal-Mart to amend their pleadings. Wal-Mart identified and disclosed its argument regarding Article 17 at the appropriate time; namely, after it received Gross's expert report. Therefore, Wal-Mart did not waive its argument with respect to Article 17.

As to the merits of Wal-Mart's motions, the parties agree that, under Indiana law, a party who has been damaged as a result of a breach of contract may generally collect consequential damages. *See Rexnord Corp. v. DeWolff Boberg & Associates, Inc.*, 286 F.3d 1001, 1004 (7th Cir. 2002). Here, the parties dispute whether Article 17 of the parties' construction contract prohibits S.C. Nestel from seeking consequential damages in this case. The parties' agree that this is an issue for the Court to decide. *See Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001) (citing *Bicknell Minerals, Inc. v. Tilly*, 570 N.E.2d 1307, 1311 (Ind. Ct. App. 1991)). Article 17 states in its entirety:

3

**ARTICLE 17**
**LIMITATION OF LIABILITY**

17.1   THE CONTRACTOR AND OWNER WAIVE CLAIMS AGAINST EACH
OTHER FOR CONSEQUENTIAL DAMAGES ARISING OUT OF OR
RELATING TO THIS CONTRACT.  This mutual waiver includes (1)
damages incurred by the Owner for rental expenses, for losses of use,
income, profit, financing, business and reputation, and for loss of
management or employee productivity or of the services of such
persons, and (2) damages incurred by the Contractor for principal
office expenses including the compensation of personal stationed
there, for losses of financing, business and reputation, and for loss of
profit except anticipated profit arising directly from the Work.  This
mutual waiver is applicable, without limitation, to all consequential due
to either party's termination of the Contract in accordance with the
provisions of the Contract documents; provided, however, that nothing
contained in this Article shall be deemed to preclude (a) an award of
liquidated damages, when applicable, in accordance with the
requirements of the Contract Documents, (b) an award for damages
for direct costs to repair third party property in accordance with the
requirements of the Contract Documents, or (c) any Damages
resulting from any violation by Contractor of the Environmental Laws
of the Storm Water Requirements.

Ex. A to Wal-Mart's Mot. to Exclude ("Ex. A"), Art. 17.1 (emphasis in original).

Wal-Mart submits that Article 17 is not ambiguous.  It submits that the Court need

look no further than the four corners of the contract to infer the parties' intent to waive all

claims for consequential damages, including damages from lost bonding capacity, arising

out of or relating to the Contract.  S.C. focuses on one specific sentence of Article 17: "This

mutual waiver is applicable, without limitation, to all consequential damages due to either

party's termination of the Contract in accordance with the provisions of the Contract

Documents."  According to S.C. Nestel, this sentence unambiguously expresses that

parties' intent that the mutual waiver of claims for consequential damages applies only

when the termination is justified under the "provisions of the Contract Documents."

Therefore, S.C. Nestel states that it is entitled to seek consequential damages from lost

4

bonding capacity because Wal-Mart's termination of the Contract was not "in accordance with the provisions of the Contract Documents."

Under Section 23.9 of the parties' contract, the Court shall construe the contract under the law of the state of Indiana. "In applying Indiana contract law, the primary purpose is to ascertain and give effect to the intentions of the parties." *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 720 (7th Cir. 2004) (citing *Ft. Wayne Bank Bldg., Inc. v. Bank Bldg. & Equip. Corp. Of Am.*, 160 Ind. App. 26, 309 N.E.2d 464, 467 (Ind. Ct. App. 1974). This requires courts to "read the agreement in a manner which harmonize its provisions as a whole and to give effect to the parties' expressed intent." *Hinc*, 382 F.3d at 720 (citing *Kelly v. Smith*, 611 N.E.2d 118, 121 (Ind. 1993)). Further, "words, phrases, sentences, paragraphs, and sections of a contract cannot be read alone"; rather, "the entire contract must be read together and given meaning, if possible." *Thor Electric, Inc. v. Oberle & Associates, Inc.*, 741 N.E.2d 373, 378 (Ind. Ct. App. 2000) (citing *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 478-79 (Ind. Ct. App. 2000)). Finally, "[w]hen a court finds a contract to be clear in its terms and the intentions of the parties apparent, the court will require the parties to perform consistently with the bargain they made." *Hinc*, 382 F.3d at 720.

Applying these principles to the present dispute, the Court concludes that Article 17 of the parties' agreement bars S.C. Nestel's claim for consequential damages. Although the parties disagree as to its meaning, they agree, and the Court concludes, that the text of Article 17 is unambiguous regarding whether or not the parties reasonably contemplated that S.C. Nestel could assert a claim for lost profits from lost bonding capacity.

Article 17 begins: "THE CONTRACTOR AND OWNER WAIVE CLAIMS AGAINST EACH OTHER FOR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATING TO THIS CONTRACT." Ex. A, Art. 17.1 (emphasis in original). This provision does not contain any limiting language, other than "arising out of or relating to this Contract." Moreover, the sentences that follow this provision do not further define and limit the specific "consequential damages" to which the general bar applies, but rather provide a non-exhaustive list of examples. Indeed, both parties agree that the examples provided in Article 17 are not explicitly listed to the exclusion of all others. Therefore, because the parties did not limit the waiver's applicability to the scenarios specifically listed, it appears that the parties intended to provide each other a broad waiver of future claims for consequential damages. Moreover, the parties specifically listed claims for lost profits. Therefore, with respect to the broad waiver of claims consequential damages, the parties specifically contemplated lost profits and explicitly listed lost profits as damages to which the general waiver applied.

S.C. Nestel submits this broad waiver of claims for lost profits only applies when the contract was terminated "in accordance with the terms of the contract." Put differently, S.C. Nestel asserts that the broad waiver of future claims for lost profits never applies when a party has breached the agreement. However, the fact that Article 17 explicitly provides an example a particular type of termination to which the waiver applies does not necessarily mean that the waiver only applies to that situation. In fact, S.C. Nestel's interpretation of the "in accordance with" language transforms the sentence from one that merely provides an example to one that provides an extensive exception to the general waiver of claims for lost profits. Considering the parties agree that the examples given were not listed to the

exclusion of all others, the parties would not logically provide such an important limitation to the waiver–namely, that it does not apply for breach of contract claims–by stating when the waiver does apply.

Article 17 is best read as providing a broad waiver future claims for consequential damages arising out of or related to the parties' construction contract.   The "termination . . . in accordance with" provision is most consistent with Article 17 as a whole when it is interpreted as an example of when the waiver applies, as opposed to identifying when the waiver does not apply.   This comports with Article 17's general approach of expressing the general waiver of claims for consequential damages, then providing non-exclusive examples of the damages and situations to which the waiver applies.   This interpretation harmonizes each of the provisions in Article 17 and unambiguously establishes the parties intent to avoid claims for lost profits in the event of a breach.

Applying Article 17's unambiguous terms to the dispute at hand, it becomes clear that S.C. Nestel agreed to waive its claim for consequential damages stemming from lost bonding capacity.   Ultimately, this claim is nothing more than a claim for lost profits as a result of Wal-Mart's alleged breach of contract.   This claim is barred by Article 17. Therefore, any evidence regarding S.C. Nestel's alleged consequential damages, including Gross's expert opinion, is irrelevant.

### III.  CONCLUSION

Therefore, Wal-Mart Motion in Limine (Dkt. No. 104) with respect to consequential

damages is **GRANTED**.  Wal-Mart's Motion to Exclude (Dkt. No. 96) is **GRANTED**.

IT IS SO ORDERED this 23rd day of March, 2010.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution to:


Raymond A. Basile
MERCER BELANGER, P.C.
rbasile@indylegal.com

Mark J. Dinsmore
BARNES & THORNBURG LLP
mark.dinsmore@btlaw.com

Jimmie Lamar McMillian
BARNES & THORNBURG LLP
jmcmillian@btlaw.com

David J. Theising
HARRISON & MOBERLY
dtheising@h-mlaw.com